GUNVANTRAI HIRABHAI **PATEL**,      )
                                      )
    *Petitioner*,      )
                                        )
v.                                    )     Civil Action No. 3:13- 0242
                                        )
PHILIP T. **MILLER**, in his official capacity as )
New Orleans Field Office Director for      )
Enforcement and Removal Operations, U.S.      )
Immigration and Customs Enforcement,      )
                                        )
    *Respondent*.      )

---

## PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS AND APPLICATION FOR ORDER TO SHOW CAUSE

---

### INTRODUCTION

Petitioner, Mr. Gunvantrai Hirabhai Patel ("Petitioner" or "Mr. Patel") is a 63-year-old grandfather and small-business owner who has been a long-time lawful permanent resident ("LPR"). Mr. Patel is currently in detention in this District after voluntarily reporting to an ICE office in Nashville, Tennessee on March 14, 2013, at the request of an ICE official. In 2007, Mr. Patel entered guilty pleas to resolve state criminal matters related to tax filings. Pursuant to those pleas, Mr. Patel completed probation and paid full restitution, fees and costs in 2009. Mr. Patel was never incarcerated for any of these crimes. He is now being held in mandatory detention without the opportunity for a bail hearing in contravention of law.

The Immigration and Nationality Act ("INA") authorizes immigration officials to arrest, detain, and release immigrants pending their removal proceedings upon an individualized assessment for bond, parole, and other forms of supervised release. *See* INA § 236(a), 8 U.S.C.

1

§ 1226(a). An exception to this general authority applies to a limited class of immigrants who are detained by immigration officials "when . . . released" from criminal custody for certain enumerated offenses. *See* INA § 236(c), 8 U.S.C. § 1226(c) (commonly referred to as "mandatory detention"). Petitioner is not among the narrow subset of people who are subject to mandatory detention under 8 U.S.C. § 1226(c).

Mr. Patel's mandatory detention in this case is contrary to the statute because he was plainly not detained by immigration officials "when . . . released" from his criminal sentence, which ended years ago, as the INA requires. *See Id.* Instead, he was arrested by ICE agents six years after his last conviction, in spite of his demonstrated success in reforming his life, facts which place Mr. Patel's detention well outside of the mandatory detention statute's language or purpose. Moreover, in addition to the plain statutory violation in Mr. Patel's case, his mandatory detention raises serious constitutional concerns, given his substantial challenge to removability, and the circumstances of his detention.

For any or all of these reasons, the Court should grant Mr. Patel's habeas petition and order Respondent to either release Mr. Patel on reasonable conditions of supervision or provide him with a constitutionally adequate bond hearing before an impartial adjudicator.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Mr. Patel has been lawfully present in the United States since 1973 and a lawful permanent resident since 1989. He was taken into ICE custody on March 14, 2013. Mr. Patel sought an immigration bond rather than being mandatorily detained, but ICE refused his request. An ICE official in Nashville sought permission to release Mr. Patel on bond in lieu of detention. His ICE supervisor also denied his request. Nearly six years earlier, Mr. Patel pled guilty to charges in Knox and Davidson Counties arising out of his failure to timely file and pay state

2

taxes. He successfully completed probation in 2009 and paid all fines and restitution. Mr. Patel was never incarcerated for these crimes.

JURISDICTION AND VENUE

In *Demore v. Kim*, the Supreme Court held that § 236(e) does not strip courts of jurisdiction to hear *habeas* petitions bringing constitutional challenges to mandatory detention. 538 U.S. 510, 516-17 (2003). The Court reasoned that *habeas* review is appropriate because the statute contains no explicit provision barring such review.

This federal Court has subject-matter jurisdiction over Petitioner's § 2241(c)(3) action because the petitioner is both (1) "in custody," *see Prieto v. Gluch*, 913 F.2d 1159, 1162-63 (6th Cir. 1990), and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488 490 (1989). This District should retain subject-matter jurisdiction over this case, even if Mr. Patel is transferred outside of this district. For example, in *Quezada v. Hendricks*, the court held that an alien's § 2241 *habeas* petition could be properly maintained in the district where he was detained at the time of filing his *habeas* petition. 821 F. Supp. 2d 702, 705 (D.N.J. 2011) ("This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of DHS at the time he filed his petition . . . and he asserts that his mandatory detention is not statutorily authorized . . . ."). *See also Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (holding subsequent release from prison did not moot previously filed *habeas* petition and petitioner satisfied Art. III case-or-controversy requirement). Jurisdiction is proper because Petitioner is currently detained in this district.

3

## STATUTORY BACKGROUND

The primary and dispositive issue in this case concerns the proper meaning of the

detention statute, INA § 236, 8 U.S.C. § 1226. Section 1226(a) provides in relevant part:

> (a) Arrest, detention, and release. On a warrant issued by the Attorney General, an
> alien may be arrested and detained pending a decision on whether the alien is to
> be removed from the United States. *Except as provided in subsection (c)* and
> pending such decision, the Attorney General—
>> (1) may continue to detain the arrested alien; and (2) may release the alien
>> on—
>>> (A) bond of at least $ 1,500 with security approved by, and
>>> containing conditions prescribed by, the Attorney General; or□
>>> (B) conditional parole . . . .

8 U.S.C. § 1226(a) (emphasis added).

Section 1226(c) creates a specific exception to the Attorney General's authority to detain

and release noncitizens pending removal proceedings. Section 1226(c)(1) provides:

> (c) Detention of criminal aliens.
>> (1) The Attorney General shall take into custody any alien who:
>>
>>> (A) is inadmissible by reason of having committed any offense covered in
>>> section 1182(a)(2) of this title,
>>>
>>> (B) is deportable by reason of having committed any offense covered□in
>>> section 1227(a)(2)(A)(ii), (A)(iii),(B), (C), or (D) of this title,
>>>
>>> (C) is deportable under section 1227(a)(2)(A)(I) of this title on the basis of
>>> an offense for which the alien has been sentence to a term of
>>> imprisonment of at least 1 year, or
>>>
>>> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable
>>> under section 1227(a)(4)(B) of this title,
>
> *when the alien is released,* without regard to whether the alien is released on
> parole, supervised release, or probation, and without regard to whether the
> alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1) (emphasis added).      The whole of 8 U.S.C. § 1226 provides the Attorney

General the authority to arrest, detain, and release immigrants pending their removal

4

proceedings, except for a limited class of noncitizens whom the Attorney General detains when released from custody for certain offenses. Only individuals who fall within that limited class are subject to mandatory, no-bond detention pending removal.

**ARGUMENT**

## I.   RESPONDENT'S MANDATORY DETENTION OF MR. PATEL VIOLATES THE STATUTE.

Mr. Patel is not subject to mandatory detention because he was not detained by immigration officials "when . . . released" from criminal custody for an enumerated offense. Instead, immigration officials arrested him six years after his last conviction and over four years after he completed his sentence for the allegedly removable offense. As every district court in the Sixth Circuit and the vast majority of district courts nationwide addressing this issue have held, Congress did not intend for mandatory detention to apply to individuals like Mr. Patel, individuals who have resolutely pursued the chance to reform themselves while incarcerated, have substantiated that reform through strong bonds to their families and community in the years following his release, and who is for these reasons neither dangerous to the community or a flight risk. Rather, Congress intended for individuals like Mr. Patel to be subject to discretionary detention—which includes the right to be considered for release on bond under 8 U.S.C. § 1226(a).

### A. Mr. Patel Is Not Subject to Mandatory Detention Because He Was Not Detained 'When . . . Released' From Criminal Custody.

The primary issue in this case involves Respondent's incorrect reading of the "when . . . released clause of 8 U.S.C. § 1226(c). As stated above, the mandatory detention statute provides, in relevant part, that the Attorney General "shall take into custody an alien who is deportable by reason having committed any [enumerated offense] *when the alien is released . . . for the same offense.*" *Id.* (emphasis added). The district courts of this Circuit are unanimous,

5

and the vast majority of district courts nationwide agree, in holding that the statute limits mandatory detention to individuals who are detained at or around the time they are released from criminal custody for their removable offenses. *See Khodr v. Adduci*, 697 F. Supp. 2d 774, 778 (E.D. Mich. 2010) ("The Court . . . agrees that the phrase 'when the alien is released' clearly and unambiguously requires that the Attorney General take the alien into custody immediately upon the alien's release from criminal custody."); *See also Rosario v. Prindle*, No. 11-217-WOB-CJS, 2011 U.S. Dist. Lexis 150602, 2012 WL 12920 (E.D. Ky. Nov. 28, 2011); *Kerr v. Elwood*, No. 12-6330 (FLW), 2012 WL 5465492, *3 (D.N.J. Nov. 8, 2012) (collecting cases and stating: "[T]he bulk of relevant decisions within this District have held that 'when the alien is released' language requires the Government to act *immediately* upon an alien's release from criminal custody and, when it does not, said alien is properly considered to be held under § 1226(a), which entitles him or her to a bond hearing.") (emphasis in original); *Garcia v. Shanahan*, 615 F. Supp. 2d 175, 180-81 (S.D.N.Y. 2009) ("For over a decade, courts analyzing section 1226(c) have consistently interpreted the statute to authorize the government to take an alien into custody *on or about the time* he is released from custody for the offense that renders him removable.") (emphasis added). This point is further elaborated at Section I.A.1, below.

> **1.** **All district courts in the Sixth Circuit have held that mandatory detention only applies to individuals who are detained on or about the time they are released from custody.**

Of the two courts in the Sixth Circuit that have addressed this issue, both have held mandatory detention invalid when the alien was not detained in a reasonable period of time after being released from criminal custody. *See Rosario v. Prindle*, No. 11-217-WOB-CJS, 2011 WL 6942560 (E.D. Ky. Nov. 28, 2011), *report and recommendation adopted*, 2012 WL 12920 (E.D. Ky. Jan. 4, 2012); *See also Khodr v. Adduci*, 697 F. Supp. 2d 774 (E.D. Mich. 2010). Both

6

courts found the "when . . . released" language in 8 U.S.C. § 1226(c) "clearly and unambiguously requires the Attorney General to take into custody certain aliens without delay in order to make applicable the mandatory detention provisions of 8 U.S.C. § 1226(c)." *Id.*

Courts have reached this conclusion in part because of the plain language of the mandatory detention statute. As the court in *Khodr* held:

> The Court is persuaded by Petitioner's arguments and agrees that the phrase "when the alien is released" clearly and unambiguously requires that the Attorney General take the alien into custody immediately upon the alien's release from criminal custody. If Congress wished to permit the Attorney General to take custody of criminal aliens at any time after being released from criminal confinement, it could have done so using the phrase "at any time after the alien is released." But, by using the word "when," Congress demonstrated its intent that such aliens be taken into custody contemporaneous with their release or not at all (at least under section 1226(c)).

*Id.* at 778-79. *See also Rosario*, 2011 WL 6942560, *3 (adopting rationale of *Khodr*'s holding) ("The decision in *Khodr* is consistent with the intent behind §1226(c)—to detain dangerous criminal aliens before they are permitted to assimilate back into the community where they may pose either a risk of danger to the community and/or a risk of flight."). The *Khodr* court's reading of the statute comports with bedrock values of statutory interpretation, so that all words are given full effect. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001). The court then acknowledged the difficulties a literal reading of the "immediacy" requirement would impose and found that "immediacy" "contemplates that the Attorney General has a reasonable period of time after release in which to take the suspect alien into custody." *Khodr*, 697 F. Supp. 2d at 780. The court declined to establish a bright-line test for what is a "reasonable period of time," but it concluded that "the four year plus delay in taking Petitioner into custody was clearly an unreasonable delay." *Id.* (citing *Zabadi v. Chertoff*, No. C 05-03335, 2005 WL 3157377 (N.D. Cal. Nov. 22, 2005) (finding unreasonable a two-year gap between release from criminal custody

7

and ICE detention); *Quezada-Bucio v. Ridge*, 317 F. Supp. 2d 1221, 1225 (W.D. Wash. 2004) (3 years).

Using this reasoning, the district courts of this Circuit have rejected *Matter of Rojas* as contrary to the plain meaning of the statute and have held that immigrants who are not detained on or about the time of their release from criminal custody are eligible for a bond hearing under § 1226(a). *See Khodr* at 774 (granting habeas relief and motion requesting individualized bond hearing).

> **2. The overwhelming majority of district courts outside the Sixth Circuit have also held that mandatory detention only applies to individuals who are detained on or about the time they are released from custody.**

The majority of courts outside the Sixth Circuit have held that the plain meaning of the "when . . . released" language of § 1226(c) "unambiguously requires an alien to be detained immediately when released from criminal custody to be subject to mandatory detention." *Charles v. Shanahan*, No. 3:12-cv-4160 (JAP), 2012 WL 4794313, *6 (D.N.J. Oct. 9, 2012); *see also Gonzalez-Ramirez v. Napolitano*, No. 12-2978 (JLL), 2012 WL 3133873, *5 (D.N.J. July 30, 2012) (holding "plain language of [§ 1226(c)] is unambiguous" and commenting, "[T]his Court rejects the argument that 'when' means 'after.'"); *Scarlett v. U.S. Dep't of Homeland Sec.*, 632 F. Supp. 2d 214, 219 (W.D.N.Y. 2009) ("[I]f Congress had intended for mandatory detention to apply any time after [noncitizens] were released, it could have easily used the language 'after the alien is released,' 'regardless of when the alien is released,' or other words to that effect.") (quoting *Quezada-Bucio*, 317 F. Supp. 2d at 1224).

In this case, Mr. Patel was free for four years after he completed probation, and free in the community for the duration of his two-year probation prior to that, until ICE decided to take

8

him into custody *six years* after his guilty plea. He therefore does not fall within the plain language of § 1226(c) because he was not detained "when . . . released" from custody.

### 3. *Matter of Rojas* is wrongly decided and not controlling.

Respondent assumingly takes the position that mandatory detention may apply at any time, even years after an individual's release from criminal custody for an allegedly removable offense. This contrary view is presumably based on the Board of Immigration Appeals' ("BIA") decision in *Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001). In *Matter of Rojas*, the BIA held that the mandatory detention statute applies regardless of how long an immigrant has been out of criminal custody for a removable offense. *See Id.* at 127. Notably, in reaching this conclusion, the BIA held that the "when . . . released" clause in § 1226(c) "does not direct the Attorney General to take custody of aliens immediately upon their release from criminal confinement." *Id.* at 122. However, the BIA held that the "when . . . released" language was a "statutory command" rather than a "description of an alien who is subject to deportation," and therefore mandatory detention could apply to non-citizens days, months, or even years after their release from criminal custody. *See Id.* at 121-22. Seven BIA members dissented from the opinion, finding the distinction cited by the majority implausible. *See Id.* at 134 (Rosenberg, dissenting) ("[T]he majority fails to provide any reason why characterizing the language as a directive makes it any less a description, particularly when that description is communicated as part of a mandate to the Attorney General."). Based on the plain language of the statute, the dissent concluded that Congress unambiguously intended for mandatory detention to apply only to individuals detained at the time of the release from criminal custody for an enumerated offense. *See Id.* at 130-34.

9

Despite the flaws and internal inconsistencies with the BIA's position—which have resonated through the few federal courts finding it persuasive—Respondent now, through his incarceration of Mr. Patel, seeks to apply this reasoning to deprive Mr. Patel of a bond hearing, despite taking him into custody nearly six years after his guilty plea, and four years after he successfully completed probation. This Court should reject Respondent's position as contrary to the plain language of 8 U.S.C. § 1226, as nearly all courts (and all courts in the Sixth Circuit) have done. To the extent Respondent urges *Chevron* deference to his position, if asserted, that assertion should be rejected because no deference applies where Congress has expressed its unambiguous intent. *See Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 842-43 (1984). Even if the statute were ambiguous, no deference would be owed in this case given the liberty interest at stake and the Respondent's unreasonable interpretation of the statute. *Id.*

4.    **Traditional tools of statutory construction confirm that mandatory detention applies only to individuals detained on or about the time of their release from criminal custody for an enumerated offense.**

Traditional tools of statutory construction also indicate Congress' unambiguous intent to restrict mandatory detention to individuals taken into custody at or around the time of their release from criminal custody. *See Khodr*, 697 F. Supp. 2d at 780 (requiring Attorney General take custody of the alien within a "reasonable period of time after release"). By contrast, Respondent's interpretation of the statute renders the "when . . . released" clause superfluous, ignores the larger statutory scheme providing for the detention and release of noncitizens pending removal proceedings generally, and leads to absurd results antithetical to Congressional intent. Furthermore, both the rule of lenity and the canon of constitutional avoidance favor a result construing § 1226(c) to be unambiguous.

10

First, Respondent's interpretation is contrary to "a cardinal principle of statutory construction that a statute should, upon the whole, be construed so that if possible, no clause, sentence or word is rendered superfluous, void or insignificant." *TRW v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted). In this case, Respondent's reading of the "when . . . released" clause "doom[s] that clause to . . . surplusage." *Waffi v. Loiselle*, 527 F. Supp. 2d 480, 488 (E.D. Va. 2007), *abrogated by Hosh v. Lucero*, 680 F.3d 375 (4th Cir. 2012); *see also Khodr*, 697 F. Supp. 2d at 779 (quoting *Waffi*). As one court stated, "[T]o read the phrase 'when . . . released' as applying to anytime—even after 50 years—after the alien is released is essentially to read the phrase out of the statute." *Jaghoori v. Lucero*, No. 1:11-cv-1076, 2012 WL 604019, *4 (E.D. Va. 2007), *abrogated by Hosh*, 680 F.3d 375.[1] The Eastern District of Michigan further explained in *Khodr*:

> [Respondents' reading] would doom the clause to 'removable surplus' . . . .
> [W]hen else could the Attorney General take an alien into custody except when he
> or she is released? To read the statute in a manner that allows the Attorney
> General to take a criminal alien into custody without regard to the timing of the
> alien's release from custody would render the "when the alien is released" clause
> redundant and therefore null.

697 F. Supp. 2d at 779 (internal citations omitted).

Second, Respondent's interpretation fails to consider the phrase "when . . . released" within the context of the statutory scheme as a whole. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 36 (1998) ("A statute is to be considered in all its parts when construing any one of them.") Respondent asserts that the "when . . . released" clause is not part of the description of individuals subject to mandatory detention. *See Rojas*, 23 I. & N.

---

[1] As explained in detail at Part I.A.4, below, the *Hosh* decision is unpersuasive, as it failed to reach the reasoning used by the *Waffi* and *Janghoori* courts and, as well as the other courts in constructing the statute, is not binding on this Court's decision. Furthermore, the court in *Khodr* chose the reasoning of the *Waffi* court to be persuasive.

Dec. at 121-22. However, § 1226(c)(1) is one sentence, which as a whole describes those immigrants who may not be released pending removal proceedings—the "when . . . released" clause refers back to the enumerated "offense" triggering mandatory detention, and the sentence must therefore be read as a whole. *See* 8 U.S.C. § 1226(c)(1); *Saysana v. Gillen*, 590 F.3d 7, 14 (1st Cir. 2009) ("We believe that [the government's] reading of the statutory language is a strained one . . . the plain language of the statute does not render the term 'when released' meaningless as applied to [subsections (A)-(D) . . . A far more natural reading is that the 'when released' language applies to an alien who has been detained criminally for one of the listed activities."); *see also Louisaire v. Muller*, 758 F. Supp. 2d 229, 236 (S.D.N.Y. 2010) ("The clear purpose of § 1226(c)(1) is to authorize the mandatory detention of immigrants who have committed offenses enumerated within § 1226(c)(1)(A)-(D) *immediately* upon their release from criminal sentences *for those same offenses*, even if they are still serving part of their sentence out in the community, under 'parole, supervised release, or probation.'") (emphasis in original). One cannot stop reading the statute just before the "when" clause and still give full meaning to the provision.

Moreover, the narrow construction of § 1226(c) is consistent with the overall immigration detention scheme. Immigration officials retain the broad authority under 8 U.S.C. § 1226(a) to detain and, if they so choose, release noncitizens facing removal, including people with past criminal convictions. *See Bracamontes v. Desanti*, No. 2:09-cv-480, 2010 WL 2942760, *6 (E.D. Va. June 16, 2010) ("[T]he statutory scheme still permits []ICE to take into custody and detain any alien believed removable—on enumerated [criminal] grounds or otherwise—and vests the broad authority in the Attorney General to administer individualized conditions of release consistent with due process protection . . . [T]he statutory language simply

12

recognizes the factual difference between certain aliens—whom Congress recognized as dangerous or a flight risk, and others already released into the community who come into []ICE custody months or even years after their release." (citations omitted).

Section 1226(c)(1) is specified as an exception to this general rule. *See* § 1226(a) (specifying authority for release "[e]xcept as provided in subsection (c)"). As such, § 1226(c)(1) is much more narrow in scope, prohibiting release for noncitizens who are transferred directly from criminal custody into immigration custody for the specific offenses enumerated in § 1226(c)(1). Failing to give any substantive meaning to the "when . . . released" clause vastly expands the scope of mandatory detention and heavily curtails the scope of immigration officials' authority under § 1226(a) to make individual bond determinations. *See Matter of Patel*, 15 I. & N. Dec. (BIA 1976) (setting forth general rule that noncitizens should not be detained unless they are flight risks or dangerous). In other words, Respondents' reading permits the exception—mandatory detention under discrete circumstances—to swallow the rule: that Congress gave immigration officials general authority to detain and release immigrants through individualized bond determinations pending the conclusion of their removal proceedings.

By ignoring this overall statutory scheme, Respondent advances a reading of the statute that is contrary to its purpose. Congress could have predicated mandatory detention upon whether a person had been convicted of certain offenses without saying anything about the timing of release from criminal custody, but it did not. Congress did not do so because it intended for mandatory detention to serve a specific function—to ensure that individuals who have been incarcerated for certain types of removable offenses will *remain* in custody until they can be removed. As the First Circuit recently explained in *Saysana v. Gillen*:

> The mandatory detention provision does not reflect a general policy in favor of detention; instead, it outlines specific, serious circumstances under which the

13

ordinary procedures for release on bond at the discretion of the immigration judge should not apply. . . . [F]inding that the "when released" language serves this more limited but focused purpose of preventing the return to the community of those released in connection with the enumerated offenses, as opposed to the amorphous purpose the Government advances, avoids attributing to Congress the sanctioning of the arbitrary and inconsequential factor of any post-[Oct. 9, 1998] custodial release becoming the controlling factor for mandatory detention.

590 F.3d at 17. Mandatory detention fails to serve Congress's "focused purpose" when applied to individuals who have long since been released from their allegedly removable offenses. *See Id. See also Quezada-Bucio v. Ridge,* 317 F. Supp. 2d 1221, 1230–31 (W.D. Wash. 2004) ("Petitioner was released from state custody, and then continued to live in the community without further criminal conduct. It does not appear that he attempted to elude authorities at any time, and the []ICE was able to find him and serve him with a Notice to Appear, to which he subsequently responded by appearing at his removal proceedings. Nothing about applying [non-mandatory detention] to petitioner's situation convinces this Court that, as a matter of public policy, the Department of Homeland Security should be allowed to continue detaining him years after he has been released from state custody . . . .").

Third, Respondent's reading of the statute is also contrary to the canon of statutory construction that statutes must be construed to avoid "absurd results." *See Lockhart v. Napolitano,* 573 F.3d 251, 260 (6th Cir. 2009) (citing *Green v. Bock Laundry Mach. Co.,* 490 U.S. 504, 509–10 (1989). Under Respondent's reading of the statute, the government must detain anyone who has served even one day in jail for an enumerated offense at any time on or after the effective date of the statute, October 9, 1998. In other words, if a person was convicted of an offense listed in the mandatory detention statute and was released from jail on October 9, 1998, Respondent would contend that the government would be *required* to hold that individual in detention without bond at taxpayers' expense, even if they commenced her removal proceedings

14

today, almost fifteen years later. The statute should be construed to avoid such an absurd result. *See Jaghoori v. Lucero,* No. 1:11–cv–1076, 2012 WL 604019, *5 (E.D. Va. Feb 22, 2012) ("The Court . . . finds . . . the risk of an absurd result occurs under the government's reading. Respondents contend that it would constitute an "absurd result" to require ICE authorities to wait at the jailhouse steps to detain prisoners upon their release. However, Congress mandated ICE do just that—detain a limited class of deportable aliens *immediately* to ensure that they cannot become a danger to the community or vanish before their removal.") (citations omitted) (emphasis added).

Fourth, given the significant liberty interests at stake in this interpretation, courts must apply the rule of lenity, "the longstanding principle construing any lingering ambiguities in deportation statutes in favor of the alien." *INS v. Cardoza-Fonseca,* 480 U.S. 421, 449 (1987); *see also I.N.S. v. St. Cyr,* 533 U.S. 289, 320 (2001). Thus, even if the meaning of "when . . . released" was not made plain by its text and the other, aforementioned tools of statutory construction, this Court should construe the statute not to apply to individuals, like Mr. Patel, who have long since returned to their communities following their release from criminal custody.

Finally, this Court should adopt the unambiguous reading of the statute explained above as it avoids the constitutional concerns raised by Respondent's position. *See Rust v. Sullivan,* 500 U.S. 173, 190–191 (1991) ("A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score.") (quoting *United States v. Jin Fuey Moy,* 241 U.S. 394, 401 (1916); *see also Rust,* 500 U.S. at 191 (noting that the "canon is followed out of respect for Congress, which we assume legislates in the light of constitutional limitations.") (citations omitted). In this case, Mr. Patel's detention years after he was released from prison and decades after his conviction raises serious constitutional

15

concerns with regard to whether this deprivation of liberty can be justified by its purpose. *See* part II.A, *infra.* A decision cabining Respondents' authority to detain noncitizens to the time of their release or shortly thereafter, in accordance with the plain language of the statute, would avoid these constitutional doubts.

**5.    The Fourth Circuit's decision in *Hosh v. Lucero* is inapposite and has been rejected by district courts outside the Fourth Circuit.**

In *Hosh v. Lucero*, the Fourth Circuit issued the only circuit court decision finding § 1226(c) to be ambiguous. 680 F.3d 375, 379–380 (4th Cir. 2012) (stating that "the meaning of § 1226(c) is not plain to [the court]" and citing competing dictionary definitions of the word "when"). However, "few (if any) courts outside the Fourth Circuit have been persuaded to follow *Hosh.*" *Davis v. Hendricks,* No. 12–6478 (WJM), 2012 WL 6005713, *8 (D.N.J. Nov. 30, 2012). Other opinions have repeatedly cited the weakness of *Hosh's* rationale and superior discussions of the "when . . . released" issue by the First Circuit in *Saysana v. Gillen.* Courts around the country have refused to accept the argument that Congress would intend for mandatory detention to apply "months or even years after an alien had been released from state custody." *Saysana v. Gillen,* 590 F.3d 7, 16 (1st. Cir. 2009). For these reasons, *Hosh's* non-binding opinion should not affect this Court's decision in Mr. Patel's case.

The *Hosh* court's decision holding § 1226(c) rested on its vacillation on the definition of "when" without consideration of the traditional tools of statutory construction. *See Hosh,* 680 F.3d at 379–80 (positing that "when" can refer to "activity occurring 'at the time that' or 'as soon as' other action has ceased or begun" or "at or during the time that" or "any or every time that . . ." (citations omitted).

Noting the lack of persuasive reasoning in the *Hosh* opinion, district courts outside of the Fourth Circuit have generally rejected its reasoning concerning the "when . . . released" issue.

16

*See, e.g. Davis v. Hendricks,* No. 12–6478 (WJM), 2012 WL 6005713, *8 (D.N.J. Nov. 30, 2012) ("[F]ew (if any) courts outside the Fourth Circuit have been persuaded to follow *Hosh.*"); *Baguidy v. Elwood,* No. 12–4635 (FLW), 2012 WL 5406193, *8 (D.N.J. Nov. 5, 2012) ("This Court joins these above-cited district courts in finding that *Hosh* is not persuasive. Rather, the court has found . . . that the First Circuit's rationale and holding in *Saysana v. Gillen* . . . comport with this Court's reading of the statute."); *Nimako v. Shanahan,* No. 12–4909 (FLW), 2012 WL 6005713, at *7 (D.N.J. 2012) (same); *Balfour v.* Shanahan, No. 12-06193 (JAP), 2013 WL 396256 (D.N.J. Jan. 31, 2013) (same); *Cox v. Elwood,* No. 12–4403 (PGS), 2012 WL 3757171, *4 (D.N.J. Aug. 28, 2012) ("This Court is also not persuaded by the Fourth Circuit's decision in *Hosh* to defer to the BIA's interpretation of 'when . . . released' as it is not binding authority on this Court . . . ."); *Bogarin-Flores v. Napolitano,* No. 12cv0399 (JAH), 2012 WL 3283286, at *3 (S.D. Cal. Nov. 30, 2012) ("The Fourth Circuit . . . found *Rojas* was decided correctly but did not present any independent reasoning or statutory construction, instead giving deference to the BIA's decision . . . . This Court finds that that the plain language is not ambiguous and clearly applies the mandatory detention provision to those aliens who are detained upon release from criminal custody."); *Castillo v. ICE Field Office Director,* No. C12 – 502–MJP–MAT, 2012 WL 5511716 (W.D. Wash. 2012 Nov. 14, 2012) (refusing to follow *Hosh* based on its own analysis of § 1226(c)). *Hosh* is simply not persuasive on this issue, and *Saysana*, along with the courts that have employed its reasoning, provides a much better guidance as to how courts should interpret § 1226(c).

### 6. Even if the 'when . . . released' clause were ambiguous, no deference is owed to Respondent's position because it is unreasonable.

Even if this Court were to conclude that the "when . . . released" clause in 8 U.S.C. § 1226(c) is ambiguous, it should not defer to Respondents' view for two reasons. First, no

deference is owed to the Executive Branch's view of its detention authority in the habeas context. Second, even assuming *Chevron* deference applies in this context, no deference is owed because the agency's interpretation is unreasonable. *See Chevron,* 467 U.S. at 842–844.

First, any deference to Respondents' interpretation of the statute would be wholly inappropriate given the liberty interests at stake. In *Zadvydas v. Davis,* the Supreme Court refused to defer to the Executive on the grounds that to do so in the habeas context would be "abdicating [a court's] legal responsibility to review the lawfulness of an alien's continued detention." 533 U.S. 678, 700 (2001). The Court stated that by conducting its own review of the reasonableness of detention it was carrying out "the historic purpose of the writ, namely, to relieve detention by executive authorities without judicial review." *Id.* (quotation marks omitted). Thus, this court should not apply principles of deference to Respondents' view.[2]

Second, even if *Chevron* deference applied in the habeas context, Respondent's interpretation of the statute is unreasonable and therefore would not be entitled to deference. *See Chevron* 467 U.S. at 842–844 (establishing that unreasonable agency interpretations of statutes are not owed deference). As the dissenters in *Matter of Rojas* explained, labeling the "when . . . released" clause as a "statutory command" makes it no less a description of the immigrants who are subject to the command. *Rojas,* 23 I. & N. Dec. at 134 (Rosenberg, dissenting). "The aliens described in paragraph (1) of section [1226(c)] are the ones who are deemed to be inadmissible and deportable for the cited violations and taken into custody *when they are released* from criminal incarceration. These are the aliens described in paragraph (2) as the ones who may not

---

[2] Moreover, as noted in Point II, *infra,* Respondents' position raises several serious constitutional concerns. *Chevron* deference is not owed to an agency's position if that position raises constitutional concerns. *See Diouf v. Napolitano,* 634 F.3d 1081, 1086 (9th Cir. 2011) (refusing to defer to ICE's interpretation of a post-removal order mandatory detention statute because of constitutional concerns).

Case 3:13-cv-00242 Document 2 Filed 03/18/13 Page 18 of 25 PageID #: 28

be released." *Christie v. Elwood,* No. 11–7070 (FLW), 2012 WL 266454, *6–7 (D.N.J. Jan. 30, 2012) (quoting *Rojas,* 23 I. & N. Dec. at 139) (emphasis added). If Congress wanted to ensure that the "when . . . released" clause was not part of the "description" of noncitizens subject to mandatory detention, it could have done so by referring in § 1226(c)(2) to immigrants "described in paragraph (1)(A)–(D)" rather than immigrants "described in paragraph (1)." For these reasons, "[t]he stretch of interpretation required by the [Rojas] majority's construction is not supported by the plain language of the statute and is unreasonable." *Christie*, 2012 WL 266454, *6–7 (quoting *Rojas,* 23 I. & N. Dec. at 139). *See also Saysana v. Gillen,* 590 F.3d 7, 16 (2009) ("[E]ven if we were to conclude that [1226(c)]were ambiguous, we could not agree that the BIA's interpretation is a reasonable one.").

Respondent's position is particularly unreasonable because it sweeps up individuals like Mr. Patel who are detained *years* after their allegedly removable convictions. Notably, *Matter of Rojas* involved a noncitizen detained two days after his release from criminal custody for his removable offense. *See Rojas* 23 I. & N. Dec. at 122. Even if one were to accept the view that § 1226(c) permits some delay in apprehending an individual after their release from criminal custody, *see, e.g.*, *Khodr*, 697 F. Supp. 2d at 780 ("reasonable period of time after release"), detaining a person who was released from all obligations under his criminal conviction four years ago and was last convicted of a crime nearly six years ago cannot be deemed reasonable under the statute. *Compare Muñoz v. Tay-Taylor*, No. 12-3764 (PGS), 2012 WL 3229153 (D.N.J. Aug. 6, 2012) (immigration officials' mandatory detention of noncitizen two years after his release was a misapplication of the statute) *and Campbell v. Elwood,* No. 12–4726 (PGS), 2012 WL 4508160 (D.N.J. Sept. 27, 2012) (roughly 9 months) *with Waffi v. Loiselle,* 527 F. Supp. 2d 480 (E.D. Va. 2007) (ruling that mandatory detention was fairly applied upon

19

apprehension within two weeks of release) *and Rojas,* 23 I. & N. Dec. at 122 (two days of release). As the court in *Zabadi v. Chertoff* concluded, "Two days is nothing like two years . . . . Even if the statute were ambiguous, therefore, the *Rojas* decisions would not be entitled to deference." 2005 WL 3157377, *4 (N.D. Cal. Nov. 22, 2005). Indeed, even the BIA acknowledged that "[t]he statute does direct the attorney general to take custody of aliens *immediately* upon their release from criminal confinement." *Rojas,* 23 I. & N. Dec. at 122 (emphasis added).

## II. Respondent's Mandatory Detention of Mr. Patel Violates the Due Process Clause of the United States Constitution.

Courts have long recognized, "[the] Due Process Clause refers to 'any person',' which means that aliens, no less than native-born citizens, are entitled to its protection." *Diop v. ICE/Homeland Sec.,* 656 F.3d 221, 231 (3d. Cir. 2011). Moreover, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001). Thus, Mr. Patel's continued detention implicates a core liberty interest that is protected by the Due Process Clause.

Two discrete aspects of Mr. Patel's mandatory detention raise serious due process concerns. First, the circumstances of Mr. Patel's detention following his successful reintegration violates the Due Process Clause, as his years living as a valuable member of his community render his detention unrelated to its purpose. Second, Mr. Patel's detention raises constitutional concerns because he has a substantial challenge to removability as an eligible party for relief under the LPR Cancellation of Removal and as a potential U-Visa recipient. While Respondent's clear violation of the INA makes it unnecessary for the Court to reach the constitutional issues in this case, in the event that it should, the Court should rule that Mr. Patel's

20

continued no-bond detention is unconstitutional under the Due Process Clause of the Fifth Amendment.

### A. As an Individual Detained Years After His Release From Criminal Custody, Mr. Patel's Mandatory Detention Violates the Due Process Clause.

As the Supreme Court and the Sixth Circuit have held, the deprivation of liberty through mandatory immigration detention is only constitutional under the Due Process Clause if it bears a reasonable relationship to its twin regulatory aims of ensuring the appearance of noncitizens at future hearings and preventing danger to the community pending the completion of a noncitizen's removal. *See Zadvydas*, 533 U.S. at 690-91 ("Where detention's goal is no longer practically attainable, detention no longer bear[s] [a] reasonable relation to its purpose for which the individual [was] committed.") (citing *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)); *Diop*, 656 F.3d at 233-34 (tying the inquiry of whether detention is reasonable to "whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community"); *Ly v. Hansen*, 351 F.3d 263, 268-270 (6th Cir. 2003) (government may detain *prima facie* removable aliens only when reasonably related to the goals of the statute: to prevent flight and danger to the community).

In *Demore v. Kim*, the Supreme Court held that mandatory detention of an individual who had conceded removability was constitutional for the brief period necessary to complete the individual's removal proceedings. 538 U.S. 510, 532 (2003). However, the Supreme Court has never authorized a reading of the statute that would permit DHS to detain noncitizens without bond in cases where flight risk and danger to the community cannot be reasonably presumed. *See Id.* at 533 (Kennedy, J., concurring) ("If the government cannot satisfy [the minimal threshold burden of showing the relationship between detention and its purpose] then permissibility of continued detention pending deportation proceedings turns solely upon the

21

alien's ability to satisfy ordinary bond procedures . . . ."); *Diop,* 656 F.3d at 232 n.10 (noting that Justice Kennedy's opinion leaves open the possibility that 1226(c) might be unconstitutional as applied unreasonably to individuals).

Courts have acknowledged in a different context that the passage of time between a noncitizen's allegedly removable offense and his or her detention at a later date can significantly blunt the supposition that he or she is a flight risk or a danger to the community. *See Chi Thon Ngo v. I.N.S.,* 192 F.3d 390, 398 (3d Cir. 1999) ("The fact that some aliens posed a risk of flight in the past does not mean they will forever fall into that category. Similarly, presenting danger to the community at one point by committing a crime does not place them forever beyond redemption."); *Rosales-Garcia v. Holland,* 322 F.3d 386, 411-12 (6th Cir. 2003) (alien's mere indefinite status as removable "bears no relation" to detainee's dangerousness or flight risk). For these reasons, "[m]easures must be taken to assess the risk of flight and danger to the community on a *current* basis. *Ngo,* 192 F.3d at 398 (emphasis added); *Snegirev v. Asher,* No. C12-1606MJP, 2013 WL 942607, *3 (W.D. Wash. March 11, 2013) (ordering bond hearing for lawful permanent resident mandatorily detained under § 1226(c) and acknowledging that Congress intended to "create a 'limited system of mandatory detention,' not a broad system that would sweep in individuals who have been living peacefully in their communities for many years"). In Mr. Patel's case, the detention took place nearly six years after his conviction. As a result, the arguable presumption of consistency with the purpose of the mandatory detention statute collapses because "DHS can only determine whether [the petitioner] poses a risk of flight or danger to the community through an individualized bond hearing." *Monestime v. Reilly,* 704 F. Supp. 2d 453, 458 (S.D.N.Y. 2010) (citing *Zadvydas,* 533 U.S. at 690) (noting that, given the passage of time since the petitioner's last removable offense, danger to the community is not

22

evident and a bond hearing is required); *See also Ramirez v. Watkins*, No. B:10-126, 2010 WL 6269226, *12-13, *20 (S.D. Texas Nov. 3, 2010); *Chen v. Aitken*, __ F. Supp. 2d __, 2013 WL 123618, *4 (N.D. Cal. Jan. 8, 2013). Because Mr. Patel's detention is both "unreasonable [and] unjustified" in light of his successful reintegration into the community in the years prior to his detention and the obvious alternatives available to immigration officials in proceeding with his deportation case, Mr. Patel should be "entitled to an individualized determination as to his flight risk and dangerousness." *See Demore*, 538 U.S. at 532 (citing *Zadvydas*, 533 U.S. at 685-86).

### B.  Mr. Patel Has a Substantial Challenge to Removability, and Thus His Mandatory Detention Violates the Due Process Clause.

Mr. Patel has a substantial challenge to his removability because he is eligible for relief under the LPR Cancellation of Removal and is an eligible candidate for a U-Visa. Accordingly, applying mandatory detention to Mr. Patel raises serious due process concerns. Mandatory detention may only apply to an individual who "is deportable" or "is inadmissible" for the grounds specified in the statute. *See* 8 U.S.C. § 1226(c). In *Demore v. Kim*, the Supreme Court held that the mandatory detention of an individual who had conceded removability was constitutional for the brief period necessary to deport the individual. 538 U.S. at 532. The Justices expressed due process concerns, however, with the mandatory detention of individuals who had substantial claims against their removability. *See, e.g., Id.* at 532 (Kennedy, J., concurring) (noting that mandatory detention is premised on a noncitizen's deportability); *Id.* at 577 (Breyer, J., concurring in part and dissenting in part, agreeing that it is constitutionally permissible to apply mandatory detention to a person who had conceded removability—the "rough equivalent" to a final order of removal—but explaining that due process would arise if the person had a substantial challenge to removability). This is because the purpose of § 1226(c) is to ensure that incarcerated individuals are not released back into the public pending their

23

deportation for those offenses. *See id.* at 532. Due process requires stronger procedural protections, however, for individuals who have legitimate challenges to their deportability.

Thus, since *Demore,* several federal courts have recognized that the mandatory detention of individuals with substantial challenges to removability would raise due process concerns. *See, e.g., Tijani v. Willis,* 430 F.3d 1241, 1247 (9th Cir. 2005) (Tashima, J., concurring) (interpreting § 1226(c) as applying only to immigrants who cannot raise "substantial argument[s] against their removability"); *Gonzalez v. O'Connell,* 355 F.3d 1010, 1020 (7th Cir. 2004) ("A wholly different case arises when a detainee who has a good-faith challenge to his deportability is mandatorily detained."); *Bourguignon v. MacDonald,* 667 F. Supp. 2d 175 (D. Mass. 2009) (finding *Demore's* holding was based in part on Kim's "conceded removability" and distinguishing Bourguignon's situation because his claim for relief had merit).

Detaining Mr. Patel without bond for the entirety of his removal proceedings therefore violates due process because Mr. Patel has a substantial challenge to removability as an eligible candidate for relief. He, unlike someone who concedes removal, has every incentive to come to court and defend his case to avoid a final order of removal. The government, in fact, has the burden of establishing removability in such cases. *See* 8 U.S.C. § 1229a(3)(A). To hold an individual like Mr. Patel in detention for the entirety of his removal proceedings would raise serious questions about whether mandatory detention in his case continues to serve its purpose of effectuating removal.

<u>CONCLUSION</u>

For the foregoing reasons, Petitioner Mr. Patel requests that this Court grant his Petition for Writ of Habeas Corpus and Application for Order to Show Cause.

Date:   March 18, 2013                Respectfully submitted,

_Elliott Oc ms_

Elliott Ozment (BPR # 4331)

_____

R. Andrew Free (BPR # 30513)
Law Offices of Elliott Ozment
1214 Murfreesboro Pike
Nashville, TN 37217
Phone: (615) 321-8888
Fax: (615) 321-5230
Elliott@ozmentlaw.com
afree@ozmetlaw.com

*Counsel for Petitioner*

25