**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| GUNVANTRAI HIRABHAI **PATEL**, | ) | |
| | ) | |
| *Petitioner*, | ) | Civil Action No. 3:13-242 |
| | ) | |
| v. | ) | |
| | ) | |
| PHILLIP T. **MILLER**, in his official capacity as | ) | |
| New Orleans Field Office Director for | ) | Judge Campbell |
| Enforcement and Removal Operations, U.S. | ) | Magistrate Judge Knowles |
| Immigration and Customs Enforcement, | ) | |
| | ) | |
| *Respondent*. | ) | |

## THE GOVERNMENT'S ANSWER TO PETITIONER'S HABEAS PETITION

COMES NOW Defendant, by and through the undersigned counsel, and answer the Petitioner's Habeas Petition as follows:

## PRELIMINARY STATEMENT

The petitioner in this case, Gunvantrai Hirabhai Patel ("Patel"), has filed this petition for habeas corpus relief in which he claims that he is being unlawfully detained under 8 U.S.C. § 1226(c) – a provision mandating the detention without an individualized bond hearing of designated criminal aliens during the conduct of their removal proceedings. As set forth below, the federal respondent – Phillip T. Miller, New Orleans Field Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement ("the Government") – submits that the petition should be dismissed because Patel's pre-order detention is mandated by statute and does not offend the due process clause of the Constitution.

First, Patel claims that his detention is wrongful because he was not taken into immigration custody immediately upon release from incarceration or sometime soon thereafter.

This crabbed and restrictive reading of 8 U.S.C. § 1226(c), however, is not mandated by the ambiguous text of the statute and additionally conflicts with two decisions of the Supreme Court in *Demore v. Kim*, 538 U.S. 510, 518-19 (2003) and *United States v. Willings*, 8 U.S. (4 Cranch) 48, 55 (1807). Hence, the Board of Immigration Appeals'("BIA") reasonable interpretation of section 1226(c) in *Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001) must be applied.

Second, Patel raises a due process challenge to his mandatory detention. This challenge fails because the Supreme Court in *Demore* specifically found that mandatory detention for criminal aliens like Patel does not violate the due process clause. *Demore*, 538 U.S. at 428 (finding that "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal").

The petition is without merit and should be denied.

## STATEMENT OF RELEVANT FACTS

Patel is a citizen and national of India who became a lawful permanent resident ("LPR" or "green card holder") in 1989. Decl. of Catherine Chargualaf ("Chargualaf Decl.") at ¶ 3 (filed separately). On April 26, 2007, Patel was convicted in the Davidson County Court, Tennessee, of three counts of Tax Evasion, a Class E felony, in violation of T.C.A. § 67-1-1440(g). Chargualaf Decl. at ¶ 4. The court sentenced him to one year at the workhouse and alternatively to one year of probation. *Id*. Thereafter, on November 8, 2007, Patel was convicted in the Knox County Court, Tennessee, of two counts of Tax Evasion, a Class E felony, in violation of T.C.A. § 67-1-1440(g). *Id*. at ¶ 5. That court sentenced Patel to two years of confinement and alternatively to two years of probation to run concurrently with the sentence of the Davidson County Court. *Id*. In addition, the courts ordered him to pay restitution in the amounts of $14,004.36 and $15,643,20, respectively. Id. at ¶¶ 4, 5.

Case 3:13-cv-00242   Document 10   Filed 04/09/13   Page 2 of 27 PageID #: 51

ICE later became aware of Patel's convictions and issued a warrant for his arrest on January 22, 2013. Chargualaf Decl. at ¶ 6. On March 15, 2013, Patel reported to the ICE office in Nashville. *Id*. at ¶ 7. ICE served Patel with a Notice to Appear ("NTA") in removal proceedings, which charged Patel with removability as an alien convicted of multiple crimes involving moral turpitude. *Id*. at ¶ 8; s*ee also* 8 U.S.C § 1227(a)(2)(A)(ii) (designating as removable those aliens convicted of multiple crimes involving moral turpitude). ICE further determined that Patel is described in 8 U.S.C. § 1226(c)(1)(B) and therefore subject to detention without bond during the pendency of removal proceedings. Chargualaf Decl. at ¶ 9.

On March 18, 2013, Patel filed this Petition. Pet., Mar. 18, 2013, ECF No. 1. At the time, he was detained in Davidson County, Tennessee. Pet. at ¶ 7; Chargualaf Decl. at ¶ 10. Thereafter, Patel was transferred to ICE's Federal Detention Facility in Oakdale, Louisiana, where he remains detained. Chargualaf Decl. at ¶ 11. On April 9, 2013, ICE served Patel with a superseding NTA, which added a charge of removability under 8 U.S.C. § 1227(a)(2)(A)(iii) (designating as removable those aliens convicted of aggravated felonies). *Id*. at ¶ 12. The superseding NTA was filed with the immigration court that same day. *Id*. at ¶ 13.

## RELEVANT LAW

### I.     The Mandatory Detention Statute, 8 U.S.C. § 1226(c)

ICE has authority to detain any alien pending a decision in removal proceedings, and also has discretion to release some aliens. 8 U.S.C. § 1226(a). Aliens who have been convicted of certain enumerated offenses, however, are subject to mandatory detention under 8 U.S.C. § 1226(c), which provides:

> (c) Detention of criminal aliens
>> (1) Custody
>> The [Secretary of Homeland Security] [1] shall take into custody any alien who—
>> …
>>> (B) is deportable by reason of having committed any
>>> offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B),
>>> (C), or (D) of this title, . . .
>> *when the alien is released*, without regard to whether the alien is released
>> on parole, supervised release, or probation, and without regard to whether
>> the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1) (emphasis added).  The Secretary has discretion to release "an alien

described in paragraph (1)" from detention only in limited circumstances, not applicable here,

upon a determination that release is necessary to protect a witness in a criminal matter.  8 U.S.C.

§ 1226(c)(2).

    Congress enacted this provision pursuant to section 303(b) of the Illegal Immigration

Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Div. C, Pub. L. No. 104-208,

§ 303(b), 110 Stat. 3009-586 (Sept. 30, 1996), in response to evidence that the Immigration and

Naturalization Service ("INS") (now ICE) was unable to remove the majority of criminal aliens,

in large part because of their failure to appear for removal hearings, and that such aliens

displayed a high rate of recidivism.  *See Demore*, 538 U.S. at 518-20.  *See also Hosh v. Lucero*,

680 F.3d 375, 381 (4th Cir. 2012) (noting that Congress passed Section 1226(c) to deal with

"near-total inability to remove deportable criminal aliens"); *Matter of Rojas*, 23 I. & N. Dec 117,

122 (BIA 2001) ("Congress was frustrated with the ability of aliens, and particularly criminal

aliens, to avoid deportation if they were not actually in Service custody when their proceedings

were completed.").

---

[1] Although 8 U.S.C. § 1226(c) specifically refers to the "Attorney General," these immigration
functions have been transferred to the Secretary of Homeland Security.  *See* 6 U.S.C. § 557.

4

Because the INS did not have the resources to implement the new detention rules immediately, Congress deferred their implementation for two years, establishing another set of rules to apply in the interim (the Transition Period Custody Rules, or "TPCR"), and providing that 8 U.S.C. § 1226(c) provisions "shall apply to individuals released after such periods." IIRIRA § 303(b)(2). In *Demore*, the Supreme Court upheld 8 U.S.C. § 1226(c) as constitutional. 538 U.S. at 531.

## II.    *Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001)

Following IIRIRA, the BIA confronted challenges from aliens who argued that they were not subject to the new detention rules because they had not been taken into custody "when . . . released" from criminal custody. The BIA reviewed the language in both the TPCR and 8 U.S.C. § 1226(c), and in both cases concluded that the Government's authority to detain criminal aliens did not depend on how soon they were taken into custody. *See Matter of Noble*, 21 I. & N. Dec. 672, 677-81 (BIA 1997) (construing TPCR); *Matter of Rojas*, 23 I. & N. Dec. at 121-26 (construing 8 U.S.C. § 1226(c)). In *Matter of Rojas*, the BIA considered whether an alien, whose conviction would otherwise subject him to 8 U.S.C. § 1226(c), was exempt because he was not taken into immigration custody until two days after his release from state custody, and concluded that he was not. *Id.* at 117-18. First, the BIA concluded that the prohibition on release of "an alien described in paragraph (1)," found in 8 U.S.C. § 1226(c)(2), was, "when read in isolation, . . . susceptible to different readings" – and therefore ambiguous. *Id.* at 120. The BIA then concluded that this "description" included only the categories of removable aliens enumerated in subparagraphs (A) through (D) of 8 U.S.C. § 1226(c) (1), that the "when . . . released" clause described only the point at which the Attorney General's detention duty arose, and that the statute therefore prohibited such aliens' release from immigration custody regardless of how or

5

when they entered such custody. *Id.* at 121. These conclusions were based on (1) grammatical considerations, *id.*; (2) the absence of any connection throughout the Immigration and Nationality Act ("INA") between "the timing of an alien's release from criminal incarceration, the assumption of custody over the alien by the Service, and the applicability of any of the criminal charges of removability," *id.* at 121; (3) statutory history, *id.* at 123-24; and (4) "practical considerations," *id.* at 124.

### III.   *Hosh v. Lucero*, 680 F.3d 375 (4th Cir. 2012), *pet. reh'g & reh'g en banc den'd*, No. 11-1753 (July 25, 2012)

The only circuit court to have addressed "whether a deportable criminal alien who was not immediately taken into custody upon release from other custody is exempt from [8 U.S.C.] § 1226(c)'s mandatory detention provisions and therefore entitled to a bond hearing" is the Court of Appeals for the Fourth Circuit. *Hosh*, 680 F.3d at 383. In *Hosh*, there was a three-year delay between the state court's imposition of supervised probation on a criminal alien and the placement of the alien in mandatory immigration detention pending his removal for the underlying conviction. *Id.* at 376. The appellate panel unanimously concluded that the removable alien "remained subject to mandatory detention" despite the delay in effecting his immigration custody. *Id.* at 383. While recognizing that "[o]ther district courts . . . including several courts within the Fourth Circuit, have held that the plain meaning of § 1226(c) requires a decision in the detainee's favor," the Fourth Circuit found that "[t]he meaning of § 1226(c) *is not plain to us*. To be sure, 'when' in § 1226(c) can be read, on one hand, to refer to action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun . . . . We must therefore consider the BIA's interpretation." *Id.* at 380 (emphasis added).

Applying *Chevron* deference to *Rojas*, the Fourth Circuit found that "far from plain, [it is] indeed unlikely that 'when . . . released' means 'at the moment of release, and not later.'" *Id.*

6

at 380; *see also Chevron U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The *Hosh* court reasoned that it was doubtful that Congress's clear intent was to deprive ICE of an opportunity to continue a criminal alien's detention if the alien "was not immediately detained after release due to an administrative oversight or any other reason . . . . While that conclusion is possible, we think that it is strained." *Id.* at 380. The court also found that "the Government's supposed failure to comply with a statutory immediacy requirement – when the statute does not specify a consequence for such noncompliance – does not bestow a windfall upon criminal aliens." *Id.* at 383 (citing *United States v. Montalvo-Murillo*, 495 U.S. 711, 720 (1990) (finding "no real blame can be fixed" for a missed detention-related deadline, and there is "no reason to bestow upon the [detainee] a windfall and to visit upon the Government and the citizens a severe penalty by mandating release of possibly dangerous [detainees]" because a timing violation occurs).

The Sixth Circuit has not considered the "when . . . released" clause of 8 U.S.C. § 1226(c), and no district court in the Sixth Circuit has had the opportunity to consider the issue since the *Hosh* decision was released. A few district courts in other jurisdictions have followed *Hosh* and some have rejected it. *See Davis v. Hendricks*, No. 12-6478 (WJM), 2012 WL 6005713, *8 (D.N.J. Nov. 30, 2012) (declining to follow *Hosh*); *Silent v. Holder*, No. 12-75, 2012 U.S. Dist. LEXIS 139143 (N.D. Ala. Sept. 27, 2012) (adopting rationale in *Hosh*); *Chikonyera v. D.H.S.*, No. 12-cv-1670, 2013 U.S. Dist. LEXIS 46453 (M.D. Pa. Apr. 1, 2013) (finding "the Fourth Circuit's analysis to be correct").

Since its original decision in 2001, the BIA has expressly declined to revisit *Matter of Rojas*. *See Matter of Garcia-Arreola*, 24 I. & N. Dec. 267, 268, 271 n.4 (BIA 2010). Thus, section 1226(c) applies to any alien who has been released from custody for an enumerated

7

offense after October 9, 1998, *see id.* at 271, and ICE's failure to invoke this authority immediately does not extinguish its duty to detain criminal aliens under section 1226(c), *see Matter of Rojas*, 23 I. & N. Dec. at 127.

## ARGUMENT

As stated in the NTA, Patel has one or more "aggravated felony" convictions that render him removable under 8 U.S.C. § 1227(a)(2)(A)(iii)[2] and two or more convictions for crimes against moral turpitude that render him removable under 8 U.S.C. § 1227(a)(2)(A)(ii). Patel does not contest that his convictions are for crimes involving moral turpitude. Pet. Br. at 23 (claiming he is eligible for relief from removal but failing to raise any "challenge" to removability). Consequently, Patel is an alien "described in" subparagraph (B) of section 1226(c)(1), the mandatory detention provision. Patel's challenge to his detention instead focuses on an alleged requirement that an alien must not only be described in subparagraphs (A) through (D) to be subject to mandatory pre-order detention but must also be taken into custody "when" the alien is released from criminal custody in order to be "described" as an alien subject to mandatory detention. Pet. Br. at 6-16. *See* 8 U.S.C. § 1226(c)(2) (stating that only aliens "described in" paragraph (1) are subject to mandatory detention).

Patel's interpretation must be rejected because the statute does not unambiguously link the timing of ICE custody with the description of an alien subject to mandatory detention. Section 1226(c) is ambiguous on several grounds. First, Patel's interpretation conflates the description of an alien subject to mandatory detention with Congress's description of the earliest

---

[2]  The NTA alleges that Patel's convictions meet the definition of aggravated felony found in 8 U.S.C. § 1101(a)(43)(M) (designating as an aggravated felony "an offense that – (i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or (ii) is described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000)").

time when ICE may take an incarcerated criminal alien into custody.  While Patel's

interpretation may be plausible, it is not compelled by the text of the statute – manifesting the

statute's ambiguity.  Second, Patel asserts that "when" has one fixed meaning, but the Supreme

Court recognized over two hundred years ago that "when" is subject to many meanings.  Third,

Patel's interpretation can only be accepted if this Court ignores the Supreme Court's prohibition

on judicial imposition of sanctions in the absence of an unambiguous congressionally-created

one.  Finally, because Patel's proffered interpretation undermines Congress's intent in enacting

section 1226(c) and the BIA's interpretation furthers it, the BIA's interpretation in *Matter of

Rojas* is reasonable and should be granted *Chevron* deference.

I.    **Mandatory Detention Applies to Criminal Aliens Taken into Custody After Release
      from Criminal Confinement**

      A.  *Standard of Review*

      This Court reviews the agency's determination that Patel is subject to 8 U.S.C. § 1226(c)

under the principles set forth in *Chevron*, 467 U.S. 837.  *See Hosh*, 680 F.3d at 378.  First, the

Court considers "whether Congress has directly spoken to the precise question at issue."

*Chevron*, 467 U.S. at 842.  If Congress's intent is clear, "that is the end of the matter; for the

court, as well as the agency, must give effect to the unambiguously expressed intent of

Congress."  *Id.* at 842-43.  If, however, the court determines that the statute is "silent or

ambiguous with respect to the specific issue," then the court must proceed to *Chevron*'s second

step, and determine whether the agency's interpretation is "based on a permissible construction

of the statute."  *Id.* at 843.

      B.  *The statue is ambiguous.*

      In this case, Congress has not specifically addressed whether mandatory detention

pursuant to 8 U.S.C. § 1226(c) is limited to those aliens who are apprehended at the precise

9

moment they are released from criminal custody for offenses enumerated in section

1226(c)(1)(B). The ambiguity is manifested in three senses: the timing of immigration detention

is not clearly linked to mandatory detention; "when" does not clearly mean "immediately and not

later"; and "when" does not clearly impose a sanction for missing a statutory deadline. *See Nat'l*

*Cable & Telecomm. Assn. v. Brand X Internet Servs.*, 545 U.S. 967, 989 (2005) (holding that a

statute is ambiguous if its "plain terms admit of two or more reasonable ordinary usages").

> 1. ***"When . . . released" is ambiguous because the clause does not clearly "describe" criminal aliens.***

As noted by the BIA in *Matter of Rojas*, section 1226(c) is ambiguous because "when . . .

released" does not clearly "describe" criminal aliens. *Rojas*, 23 I. & N. Dec. at 120-21. Rather,

the clause can also be interpreted as "describing" the accrual of ICE's duty to apprehend criminal

aliens described exclusively by subparagraphs (A) through (D). *Id.* As explained by in *Sulayo*:

> This ambiguity results from the interaction of its two constituent paragraphs.
> Section 1226(c)(2), requires the Attorney General to take into custody an alien
> described in sections 1226(c)(1)(A) through (D) "when the alien is released" from
> custody or incarceration. There are two plausible interpretations to the phrase "an
> alien described in paragraph (1) (contained in section 1226(c)(2)): (1) it refers
> only to the classes of aliens described in section 1226(c)(1)(A) through (D); or (2)
> it refers to the classes of aliens described in section 1226(c)(1)(A) through (D)
> who are taken into custody "when . . . released." Both interpretations are
> reasonable.

*Sulayao v. Shanahan*, No. 09-cv-7347, 2009 WL 3003188, at *4-5 (S.D.N.Y. Sept. 15, 2009);

*see also Serrano v. Estrada*, No. 01-cv-1916, 2002 WL 485699, *3 (N.D. Tex. Mar. 6, 2002);

*Saucedo-Tellez v. Perryman*, 55 F. Supp. 2d 882, 844-85 (N.D. Ill. 1999). Thus, the indenting of

subparagraphs (A) through (D) and the placement of "when . . . released" at the end of paragraph

(1) leaves the dependent clause's object unclear and renders the provision ambiguous.

The Government's reading also takes into account the disjointed structure of paragraph

(1). Unlike subparagraphs (A) through (D), the "when released" phrase does not fit together

with the definition's introductory phrase "an alien who."  *Compare* 8 U.S.C. § 1226(c)(1)(A)

(calling for detention of "an alien who . . . is inadmissible by reason of having committed any

offense") *with* 8 U.S.C. § 1226(c)(1) (allegedly calling for detention of "an alien who . . . when

released from custody").  Given the awkward flow of the sentence, it is unlikely that "when . . .

released" describes the relevant aliens.

### 2. Even if "when" is part of the description of criminal aliens, the term does not unambiguously limit ICE's authority to act to one specific moment.

When determining whether a provision is ambiguous, a court must consider whether

there are other meanings that make sense given the context.  Even though a word may have

several common meanings, adequate context may remove all ambiguity.  *Rojas*, 23 I. & N. Dec.

at 120.  Because Congress failed to provide sufficient context for the word "when" in section

1226(c), the relationship of "when" to the application of the mandatory detention provision

remains open to several interpretations.  *Id.*  Patel claims that this Court has full latitude to

decide the meaning of "when" for itself, but this Court does not start with a clean slate.

### a.  The Supreme Court found "when" ambiguous.

The Supreme Court has already provided guidance on the meaning of "when."  In 1807,

the Supreme Court grappled with much the same question facing this Court today:  the meaning

of "when" as used by Congress in a statute.  In *United States v. Willings*, the plaintiffs contended

(much like the petitioner here) that the term "when" "designate[d] the precise time when a

particular act must be performed in order to save a forfeiture; the defendants insist[ed] that it

describes the occurrence which shall render that particular act necessary."  *Willings*, 8 U.S. at 55.

In contemplating the correct interpretation of the term "when," Chief Justice Marshall remarked,

"That the term may be used, and, either in law or in common parlance, is frequently used in the

one or the other of these senses, cannot be controverted; and, of course, the context must decide in which sense it is used in the law under consideration."  *Id.*

In the intervening 205 years, the seemingly contradictory meanings of the term "when" have not disappeared from our language or our dictionaries.  Just as the Supreme Court in *Willings* reasonably interpreted the term "when" as designating the time that an owner's obligation to register a ship first accrues, the BIA reasonably interpreted the term "when" as designating the time that the Department of Homeland Security's duty to take an alien into custody first accrues.  The word "when" – without more context – does not unambiguously limit section 1226(c) to aliens apprehended at the moment of their release from criminal detention.  Such context could have been provided in section 1226(c) by Congress but was not, leaving the timeframe for action unclear.

### b.  The Fourth Circuit found "when" ambiguous.

Looking at the same word over 200 years later, but this time in reference to section 1226(c), the Fourth Circuit similarly found the word "when" is ambiguous because Congress could have – but did not – provide sufficient context to elucidate its meaning.  *See Hosh*, 680 F.3d at 380.  Specifically, the *Hosh* court unanimously held that "it is far from plain, and indeed unlikely, that 'when . . . released' means 'at the moment of release, *and not later.*'"  *Id.*  Ultimately, the Fourth Circuit held that "we cannot conclude that Congress clearly intended to exempt a criminal alien from mandatory detention and make him eligible for release on bond if the alien is not *immediately* taken into federal custody."  *Hosh,* 680 F.3d at 381.

### c.  Numerous district courts have found "when" ambiguous.

Patel cited only a few district court decisions in his petition, but there are numerous district court decisions on point:  some supporting Patel's position, but also a large number

12

finding the word "when" ambiguous and therefore deferring to the BIA's Rojas interpretation in *Matter of Rojas*.

In *Sulayao*, for example, the district court considered the argument that the term "when" means only at the time of release. Rejecting this argument, the *Sulayao* court explained that the term "when" is not limited to connotations of immediacy:

> The word "when," as used in the phrase "when the alien is released," is ambiguous. As several courts have recognized, "when" can "include[ ] the characteristic of 'immediacy,' referring in its primary conjunctive sense, to action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun." *Waffi* [*v. Loiselle*], 527 F. Supp. 2d [480,] 488 [E.D. Va. 2007] (citing The Oxford English Dictionary 209 (2d ed.1989), and citing The American Heritage Dictionary of the English Language (4th ed. 2000)). "When" can also mean "at or during the time that." Concise Oxford English Dictionary (11th ed. rev. 2008). These different definitions lead to two different meanings of the phrase "when the alien is released," and therefore, two different conclusions as to whether petitioner's detention is authorized by section 1226(c).

2009 WL 3003188 at *4. In addition to the definitions discussed by the *Sulayao* court, there are other definitions of "when" that do not have characteristics of immediacy. *See, e.g.*, Webster's Ninth New Collegiate Dictionary at 1342 (1991) (defining "when" in a conditional sense; *i.e.*, "in the event that").[2] Given these numerous and somewhat conflicting meanings of the word "when," Congress could have intended either that aliens be apprehended "just at the moment that" they are released or that aliens be apprehended "in the event that" they are released. "The existence of [these two] alternative dictionary definitions of ['when'], each making some sense under the statute, [] indicates that the statute is open to interpretation." *See Nat'l R.R. Passenger Corp. v. Boston & Maine*

---

[2] For example, this definition would apply to the statement "please return the book *when you finish reading it*." In this context, the book's owner would not expect the borrower to return the book the very instant the borrower finished reading it.

13

*Corp.*, 503 U.S. 407, 418 (1992); *see also MCI Telecomms. Corp. v. AT&T Co.*, 512 U.S. 218, 226-27 (1994).

### 3. *Significant splits in judicial opinion indicate ambiguity.*

Patel asserts that his interpretation should control because an "overwhelming majority" of courts have determined that "when" is not ambiguous. *See* Pet. Br. at 8. While the sheer number of decisions rejecting *Rojas* may outweigh the number of decisions deferring to *Rojas*, Patel's assertions as to the strength of his position are misleading for several reasons.

First, even if decisions granting habeas petitions *outnumber* those that have deferred to *Rojas*, it is not clear that those district court decisions *outweigh* the decisions embracing the Government's interpretation. Many of the district court decisions cited by Patel have either been abrogated by *Hosh* or failed to address the Government's argument (adopted as a second independent basis for decision in *Hosh*) that a deadline is aspirational unless Congress expressly provides otherwise. *See* Pet. Br. at 11 (citing several decisions from the Eastern District of Virginia). Additionally, Patel cites repeatedly to *Khodr v. Adduci*, 697 F. Supp. 2d 774 (E.D. Mich. 2010), a district court case that itself relied upon the abrogated Eastern District of Virginia decisions and fails to address *Willings* and the aspirational nature of the term "when."

Second, Patel's reliance on *Saysana v. Gillen*, 590 F.3d 7 (1st Cir.2009) is misplaced. In *Saysana*, the First Circuit interpreted "when" in the context of the Transitional Period Custody Rules and not in relation to the gap between criminal releases and immigration detention. To the extent that the First Circuit held that the "when . . . released" clause was unambiguous, it did so exclusively regarding the issue of whether that language encompassed releases for any offenses, or just those listed in section 1226(c)(1)(A)-(D). It is well-established that *Chevron* analysis is issue-specific. *See United States v. Geiser*, 527 F.3d 288, 296 (3d Cir. 2008) (discussing

14

*Fedorenko v. United States*, 449 U.S. 490 (1981), where the term "persecution" was found "ambiguous when applied to a prisoner forced to assist in concentration camp operations, but . . . not ambiguous when applied to an armed camp guard"). Consequently, the First Circuit's holding that the "when released" clause was unambiguous with respect to the effective date does not establish that it is also unambiguous with regards to other issues, such as the temporal scope of ICE's duty and authorization to mandatorily detain, which is the issue in this case

Fourth, careful scrutiny of the district court decisions finding section 1226(c) to be "unambiguous" reveals a hesitance by those same courts to declare exactly what the "unambiguous" statute means. Instead of articulating the exact temporal circumstances under which mandatory detention applies to criminal aliens, district courts embracing Patel's position turn *Chevron* analysis on its head. Initially, they declare that "when" unambiguously requires "immediate" detention. Then, they declare that, unlike "when," the contours of "immediacy" are ambiguous and can only be determined by analyzing the facts of each case against a subjective "reasonableness" yardstick. *See* Pet. Br. at 7 (admitting that the *Khodr* court "declined to establish a bright-line test for what is a 'reasonable period of time'"); *compare with* Pet. Br. at 6 (citing other district court decisions holding that "when" means "at or around the time" of release and "immediately upon" release). These courts' embrace of a "case-by-case analysis" implicitly acknowledges that the authority to detain criminal aliens under 8 U.S.C. § 1226(c) should not be limited to a single moment. Unfortunately, the same courts refuse to admit their subterfuge because it would require them to move on to *Chevron* step two, at which point they might be forced to defer to an interpretation that, though reasonable, they do not prefer.

To illustrate this point, consider two decisions by the same district judge issued only one month apart. In *Dimanche v. Tay-Taylor*, the district court granted the alien's habeas petition

15

with the caveat that it did so "under these circumstances." *Dimanche v. Tay-Taylor*, No. 12-cv-3831 (AET), 2012 WL 3278922, at *2 (D.N.J. Aug. 9, 2012). The alien in that case had been convicted of two removable offenses but had been released from his last removable offense five years before ICE initiated removal proceedings and took him into custody. A month later, in *Ramirez v. Elwood*, the district court denied the alien's habeas petition, again prefacing its decision with "under these circumstances." *Ramirez v. Elwood*, No. 12-cv-4730 (AET), 2012 WL 3949946, at *3 (D.N.J. Sept. 10, 2012). In *Ramirez*, the alien's release from his last aggravated felony had taken place one year before he was taken into immigration custody. Clearly, the district court did not believe that "when released" had a single, clear meaning. Rather, the district court employed its own sliding-scale reasonableness standard to the facts of each case. Under *Chevron*, however, the court was not authorized to employ a sliding scale to the facts of the case. The court should have admitted that the statute is ambiguous and then passed to *Chevron* step two.

The wide variety of opinions rejecting *Rojas*, none of which articulate a bright-line standard, are in and of themselves instructive. After all, "[t]he fact that courts have disagreed so in interpreting [8 U.S.C. § 1226(c)] supports the conclusion that it is ambiguous." *Diaz*, 2011 WL 3422856, at *3; *see also Beck v. City of Cleveland*, 390 F.3d 912, 920 (6th Cir. 2004) ("Judicial decisions that differ on the proper interpretation of [a statute] reflect this ambiguity."). Because the statutory language is clearly susceptible to multiple interpretations, there is good reason for this Court to find that the clause "when the alien is released" is ambiguous, and to give *Chevron* deference to the decision of the BIA in *Matter of Rojas*.

16

**C. Where Congress explicitly provided limited exceptions to section 1226(c) detention but the timing of detention was not one of them, this Court may not judicially create another.**

Unlike section 1226(a), section 1226(c) includes no authority to release aliens on bond. Instead, it provides that ICE "shall take into custody" during the pendency of removal proceedings any alien who is inadmissible or deportable due to commission of certain categories of offenses enumerated in the statute. 8 U.S.C. § 1226(c)(1). Further, it indicates that ICE "may release" such individuals "only" when necessary in specific instances where the alien has provided material assistance in a criminal matter. 8 U.S.C. § 1226(c)(2). The specific inclusion of a provision for the release of a narrow class of aliens subject to detention under section 1226(c)(2) makes clear that other aliens falling within the scope of section 1226(c) *may not* be released. *See TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.").

**D. Even if the statute unambiguously requires immediacy, it does not unambiguously impose a sanction for failing to meet this requirement.**

The Supreme Court in *Brock v. Pierce County*, 476 U.S. 253, 262-63 (1986), and the Fourth Circuit in *Hosh* provide additional guidance to this Court in interpreting 8 U.S.C. § 1226(c), advising that, even if "when . . . released" is interpreted as a deadline for ICE to take aliens into custody, courts nonetheless may not judicially impose a sanction for failure to meet this timeline absent a clear indication that Congress intended that result. *See Hosh,* 680 F.3d at 381 ("[E]ven if we assume that the statute commands federal authorities to detain criminal aliens at their exact moment of release from other custody, we still conclude that a criminal alien who is detained *after* that exact moment is not exempt from mandatory detention.") (emphasis in original). Indeed, as the *Hosh* court noted:

17

> We cannot deem it clear that Congress would, on one hand, be so concerned with criminal aliens committing further crimes, or failing to appear for their removal proceedings, or both, that Congress would draft and pass the mandatory detention provision, but on the other hand, decide that if, for whatever reason, federal authorities did not detain the alien immediately upon release, then mandatory detention no longer applies.

*Hosh*, 680 F.3d at 380 n.6.

The *Hosh* court's decision reflects a default rule of statutory construction: statutes that provide guidance on how quickly a Government official should discharge his duties "are usually construed as 'directory, whether or not worded in the imperative.'" *Ralpho v. Bell*, 569 F.2d 607 (D.C. Cir. 1977) (citing *French v. Edwards*, 80 U.S. (13 Wall.) 506, 511 (1872)). "Directory" deadlines are "hortatory or advisory" guidelines for agency action, which do not affect an agency's authority to act after the deadline has passed, as opposed to "jurisdictional" deadlines beyond which action is proscribed. *In re Siggers*, 132 F.3d 333, 336 (6th Cir. 1997).

One of the earliest articulations of this rule of statutory construction is found in *French v. Edwards*, 80 U.S. 506, 511 (1872). In *French*, the Supreme Court advised that congressional deadlines to government agencies are generally interpreted as hortatory and "do not limit their power or render its exercise in disregard of the requisitions ineffectual." *Id.* at 511. Over time, this rule served as a primary tool of statutory construction for all courts because it reflected the realities affecting government action. [3] As the Supreme Court observed, "It ignores reality to

---

[3] Patel asserts that "[t]raditional tools of statutory construction" support his interpretation, but he fails to articulate what those tools are, how they compel a single interpretation to the exclusion of others, and how the rules of construction articulated by the Government do not control. Pet. Br. at 10. Although Patel does cite the rule of lenity and the canon of constitutional avoidance, neither plays a role here. *Id.* "[The rule of lenity is a doctrine of last resort, and it cannot overcome a reasonable BIA interpretation entitled to Chevron deference." *Mizrahi v. Gonzales*, 492 F.3d 156, 174-175 (2d Cir. 2007). Moreover, the rule of lenity has limited application, and is generally not applied to detention provisions. *See Hosh*, 680 F.3d at 384. Furthermore, constitutional avoidance does not come into play because mandatory detention (that has not

18

expect that the Government will be able to secure perfect performance from its hundreds of thousands of employees scattered throughout the continent." *Office of Pers. Management v. Richmond*, 496 U.S. 414, 433 (1990) (internal quotation omitted). Taking these realities into consideration, the Supreme Court directs that statutory deadlines, when applied to the Government, are generally interpreted as advisory deadlines meant to prod the Government to expeditious action. *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158 (2003).

This default rule of statutory construction even applies when courts are interpreting statutes that contain *unambiguous* and *explicit* deadlines. For example, in *Brock*, the Supreme Court considered the Comprehensive Employment and Training Act, which contained a provision requiring the Secretary of the Labor to determine whether an allegation is substantiated within 120 days of receiving a complaint regarding misuse of funds disbursed under the Act. *Brock*, 476 U.S. at 284. Even though the deadline for action was clear, the Supreme Court still found that "[t]he 120-day provision was clearly intended to spur the Secretary to action, not to limit the scope of his authority." *Id.* Thus, action by the Secretary after the 120 deadline had passed nonetheless was deemed to be authorized under the statute. *Id.* The Supreme Court has reiterated this principle numerous times. In *United States v. James Daniel Good Real Property*, the Supreme Court explained that "if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 63 (1993). Ten years later, the Supreme Court again clarified that "a statute directing official action

---

become prolonged) is not constitutionally suspect. *See Ly v. Hanson*, 351 F.3d 263 (6th Cir. 2003) (rejecting constitutional challenge to mandatory detention that has not become prolonged). The gap in custody raised in this case does not affect section 1226(c)'s constitutionality because Congress's goal of assuring an alien's presence at the conclusion of removal proceedings is nonetheless furthered by detention that commences after a gap.

needs more than a mandatory 'shall' before the grant of power can sensibly be read to expire when the job is supposed to be done." *Peabody Coal Co.*, 537 U.S. at 161.

This general rule applies to detention-related deadlines as well. In *United States v. Montalvo-Murillo*, the Supreme Court ruled that a suspect could remain detained when a detention hearing had been delayed several weeks, despite a statutory command that it be held "immediately" upon presentment before a court. *United States v. Montalvo-Murillo*, 495 U.S. 711, 717-718 (1990). Because "no real blame can be fixed" for a missed detention-related deadline, the Supreme Court observed that there is "no reason to bestow upon the [detainee] a windfall and to visit upon the Government and the citizens a severe penalty by mandating release of possibly dangerous [detainees]" because a timing violation occurs. *Id*. at 720. In consequence, the Court held that the failure to comply with the immediate-hearing requirement did not divest the Government of its authority to detain the suspect where the statute did not specify any such consequence. *Id.* at 717-18 ("Although the duty is mandatory, the sanction for breach is not the loss of all later powers to act.").

Since Congress was presumably aware of this rule of statutory construction when it drafted 8 U.S.C. § 1226(c) and nonetheless chose not to specify a sanction for failure to detain an alien "when released," the timing provision is merely "directory" or "hortatory or advisory." *Siggers*, 132 F.3d at 336. Consequently, this Court may not judicially create a sanction prohibiting ICE from fulfilling its duty to *mandatorily* detain criminal aliens described in 8 U.S.C. § 1226(c)(1)(A) through (D).

Patel misguidedly translates a stated *preference* for expeditious action into a *requirement* for instantaneous and flawless action. This Court should decline to make the same error.

20

### E. The BIA's interpretation is reasonable and therefore entitled to deference.

Because the clause "when the alien is released" is ambiguous, this Court should defer to the BIA's interpretation of 8 U.S.C. § 1226(c) unless it bears no relation to the purpose of the statute. *Chevron*, 467 U.S. at 843-44. As long as the agency's "choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by statute, [a court] should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." *Id.* at 845 (quoting *United States v. Shimer*, 367 U.S. 374, 382-83 (1961)).

Under the *Chevron* standard, the BIA's interpretation should be given controlling weight because it is consistent with the statute's congressional purpose. *See Matter of Rojas*, 23 I. & N. Dec. at 121-24. Patel claims that the BIA's interpretation is unreasonable because "it sweeps up individuals like Mr. Patel who are detained years after their allegedly removable convictions." Pet. Br. at 19. Yet, Patel fails to explain why treating all presumptively deportable criminal aliens alike is patently "unreasonable." The gap between Patel's convictions and the initiation of removal proceedings did not change the fact that – as a criminal alien – he is presumptively removable and that – as a criminal alien – he has few avenues of relief from removal available to him. Patel simply cannot overcome the Supreme Court's finding that "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to *or during* their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed . . . ." *Demore*, 538 U.S. at 528. Because flight *during* removal proceedings has already been found to constitute a constitutionally sufficient goal, Patel's constitutional claim falls short.

Finally, the BIA interpretation is reasonable because it does not subordinate Congress's objective (detention of criminal aliens during removal proceedings) to perfect performance by

21

the ICE.  *See* S. Rep. No. 104-48, at 1 (showing that Congress was aware when it enacted 8 U.S.C. § 1226(c) that the Government's inability to detain criminal aliens was often attributable to factors outside the Government's control).  In fact, under the BIA's interpretation, the entire paragraph is given meaning; and the "when . . . released" clause links with other detention timing provision.  Under the BIA's interpretation, the clause "when the alien is released" is not surplusage; it specifies time at which Government's duty to take custody of an alien first arises.  *See Matter of Rojas*, 23 I. & N. Dec. at 121-24.  The clause clarifies that criminal aliens must serve their entire criminal sentences before the Government can place them in mandatory immigration detention pending removal and is consistent with similar language found in other provisions.  *See, e.g.*, 8 U.S.C. § 1228(a)(3) (prohibiting "removal of any alien sentenced to actual incarceration, before release from the penitentiary or correctional institution where such alien is confined"); 8 U.S.C. § 1231(a)(4)(A) ("[T]he Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment."); 8 U.S.C. § 1231(a)(4)(D) (denying cause of action to aliens serving criminal sentences of imprisonment who might seek to compel removal in order to avoid serving their full sentences.).

In sum, absent specific text or legislative history showing that Congress drafted section 1226(c) to subordinate mandatory detention to seemless detention, this Court may not adopt Patel's interpretation.  *Cf. Brock*, 476 U.S. at 265 (refusing to find authority expired because "[t]here is no indication in the legislative history that Congress was concerned that the Secretary was treating prime sponsors too harshly; to the contrary, the House and Senate Reports consistently voice Congress' belief that the Secretary had not been aggressive enough in discovering and rectifying abuses")

22

## II.    Mandatory Pre-Order Detention Is Lawful

Patel claims that mandatory pre-order detention violates the due process clause of the Constitution.  Pet. Br. at 20.  His claims however, have already been rejected by the Supreme Court and the Sixth Circuit.  As a starting point, it must be remembered that the Supreme Court, in *Demore*, 538 U.S. at 528, held that *mandatory* detention under section 1226(c) of criminal aliens pending final orders of removal is permissible and not unconstitutional.  The congressional concerns underlying the passage of section 1226(c), discussed at length in the opinion of the Supreme Court and found to be valid in terms of the exercise of legislative judgment, included Congress's determination that detention pending the conclusion of proceedings "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal, thus increasing the chance that, if ordered removed, the aliens will be successfully removed."  *Id*. at 528

In *Demore*, the Supreme Court distinguished mandatory detention of criminal aliens during removal proceedings from the potentially-open-ended post-order detention addressed in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  *Demore*, 538 U.S. at 524.  Thus Patel's reliance on *Zadvydas* is inappropriate.  Pet. Br. at 21.  The Sixth Circuit in *Ly v. Hanson*, balanced these two decisions and ultimately declined to "require the United States to hold bond hearings for every criminal alien detained under [8 U.S.C. § 1226(c)]").  *Ly v. Hanson*, 351 F 3d 263 (6th Cir. 2003).  Patel attempts to distinguish his situation, asserting that he, unlike the alien in *Demore*, has "a substantial challenge to removability."  Pet. Br. at 23.  His attempts to distinguish his case fail for three reasons.

First, Patel does not raise a "challenge" to removability; he raises only eligibility for discretionary relief from removal.  *See* Pet. Br. at 23 ("Mr. Patel has a substantial challenge to

his removability because he is eligible for relief . . . .").  Such discretionary relief does not affect the initial decision regarding his "removability."  In fact, relief from removal is not even considered by an immigration judge until *after* the alien has conceded or been found removable.  Thus, where Patel fails to articulate any basis for challenging his removability under 8 U.S.C. § 1227(a)(2)(A)(ii), Patel has failed to articulate a "substantial challenge to removability."

Second, even if Patel did raise a challenge to removability, he must raise that challenge in a hearing before the immigration judge – not this court.  *See* 8 C.F.R. § 1003.19(h)(2)(ii) (providing jurisdiction for immigration judge to consider alien's claim that he is "not properly included" in the mandatory detention category).  If the immigration judge rules against an alien, the alien may appeal this determination to the BIA.  8 C.F.R. § 1236.1(d)(3).  These bond proceedings take place separate from the underlying removal proceedings, and thus an alien does not need to wait for his removal proceedings to be resolved before receiving a ruling regarding his detention.  8 C.F.R. § 1003.19(d); *see also Demore*, 538 U.S. at 514 n. 3 (explaining that a *Joseph* hearing gives an alien the opportunity to avoid mandatory detention by establishing that he is not an alien, was not convicted of a crime requiring mandatory detention, or is otherwise not subject to mandatory detention); *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999) (setting out standards for hearing before immigration judge where alien challenges application of mandatory detention provision).  Because Patel can raise his challenges to removability in immigration court, the procedural due process clause of the Constitution is not offended.

Finally, Patel wrongly asserts that 8 U.S.C. § 1226(c) does not apply to him because he "cannot be reasonably presumed" to pose a flight risk or danger to the community.  Pet. at 21.  Patel fails to acknowledge that fortuitous delays in the initiation of removal proceedings do not

24

impact an alien's incentives to flee from removal.[4]  An alien who has not been targeted for removal has no reason to evade authorities.  It is only after removal proceedings have been initiated and the alien realizes that criminal aliens have few avenues for relief from removal, that an alien poses a flight risk.  Thus, contrary to Patel's assertions, detention *during* removal proceedings, even if initiated sometime after release from criminal custody, is reasonable and constitutionally permissible because it undeniably furthers Congress's goal of ensuring an alien's presence *at the conclusion of* removal proceedings and at removal.  *Demore*, 538 U.S. at 528 (finding mandatory pre-order "detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed").  Thus, Patel's detention furthers Congress's purpose in passing 8 U.S.C. § 1226(c):  ensuring that Patel is present at the *conclusion* of removal proceedings.

Patel's petition should be dismissed because, as an alien removable under 8 U.S.C. §§ 1227(a)(2)(A)(ii) and (iii), his detention under 8 U.S.C. § 1226(c) without a bond hearing does not offend the Constitution.

## CONCLUSION

Considering the ambiguity of the statute, the clearly expressed intent of Congress regarding the detention of criminal aliens pending decision on removal, the deference due to the BIA's interpretation under *Chevron*, and the constitutionality of mandatory immigration detention, the petition of habeas corpus relief should be denied.

---

[4]  For removal purposes, Congress treats a five-year-old conviction the same as a five-week-old conviction.  *See, e.g.*, *Garcia v. Holder*, 638 F.3d 511, 513 (6th Cir. 2011) (denying challenge to removal order where alien was convicted of aggravated felony in 1998 and removal proceedings were not initiated until over six years later).

Dated:  April 9, 2013

DAVID RIVERA
ACTING UNITED STATES ATTORNEY

BY:     s/ Mercedes C. Maynor-Faulcon
MERCEDES C. MAYNOR-FAULCON
ASSISTANT UNITED STATES ATTORNEY
110 9th Avenue South, Suite A-961
Nashville, TN 37203-3870
Telephone Number: (615) 736-5151
B.P.R. # 013330

STUART F. DELERY
Acting Assistant Attorney General
Civil Division

ELIZABETH J. STEVENS
Assistant Director
District Court Section
Office of Immigration Litigation

/s/ Gisela A. Westwater
GISELA A. WESTWATER
Nebraska State Bar 21801
Senior Litigation Counsel
District Court Section
Office of Immigration Litigation
U.S. Department of Justice – Civil
Division
P.O. Box 868, Ben Franklin Station
Washington, DC  20044
Telephone:  (202) 532-4174
Facsimile:  (202) 532-4393
E-mail:  Gisela.Westwater@usdoj.gov

*Counsel for Respondent*

26

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was forwarded by electronic means via the Court's electronic filing system this 9th day of April 2013 to the following:

> H. Elliott Ozment
> R. Andrew Free
> Law Office of Elliott Ozment
> 1214 Murfreesboro Pike
> Nashville, TN 37217
> *Attorneys for Petitioner*

Dated: April 9, 2013                                   Respectfully submitted,

                                        By: s/ Gisela A. Westwater
                                             GISELA A. WESTWATER
                                             Senior Litigation Counsel
                                             District Court Section
                                             Office of Immigration Litigation
                                             U.S. Department of Justice – Civil Division
                                             P.O. Box 868, Ben Franklin Station
                                             Washington, DC 20044
                                             Telephone: (202) 532-4174
                                             Facsimile: (202) 532-4393
                                             E-mail: Gisela.Westwater@usdoj.gov

                                             *Counsel for Respondent*

27